UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER DOUGLAS,<br><br>       Plaintiff,<br><br>   v.<br><br>HEATHER SHIRLEY, et al.,<br><br>       Defendants. | No. 1:23-cv-00653-KES-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(ECF No. 35)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS |

### I.    INTRODUCTION

Plaintiff Roger Douglas is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. This case proceeds on Plaintiff's Eighth Amendment conditions of confinements claims against Defendants Shirley, Cronjager, and DeGough, stemming from Plaintiff's allegations that the water at Wasco State Prison (WSP) is dangerously contaminated.

On October 18, 2024, Defendants filed a motion for summary judgment, arguing that the undisputed facts showed that the water at WSP is not dangerously contaminated and that Plaintiff's alleged allegations of harm from drinking the water are incorrect. (ECF No. 35). As discussed further below, despite two extensions that culminated in a January 21, 2025 deadline for Plaintiff to oppose Defendants' motion, Plaintiff has failed to do so.

1

Upon review, the Court concludes that Defendants have presented sufficient evidence showing that there are no genuine issues of material fact and they are entitled to judgment as a matter of law. Accordingly, the Court will recommend that Defendants' motion for summary judgment be granted.

## II. BACKGROUND

### A. Plaintiff's Complaint

Plaintiff filed his complaint on April 28, 2023. (ECF No. 1). He alleges as follows.

Defendant Scott DeGough, the acting Water Contractor, relayed false information to WSP staff. He hid the danger of the contaminated carcinogenic water filled with 1, 2, 3, trichloropropane (TCP). Defendant DeGough failed to monitor the true risks of the dangerous toxin and failed to tell his superiors the truth of the risk of stomach ailments and the risk of cancer.

Defendant J. Cronjager, the Head of Health and Safety, has a sworn duty to always second guess, investigate, and go above and beyond to make sure that the water is not toxic and infested with chemicals that kill and cause cancer.

Defendant H. Shirley, the Warden of WSP, is the overseer of the prison's wellbeing. Defendant Shirley did not implement a productive plan to remedy the bad water situation. Defendant Shirley outlawed bottled water for sale and as an alternative to drinking toxic water.

Plaintiff is forced to drink toxic water. Shafter, Wasco City, and WSP drink water from Well #1 and Well #2. Defendant Shirley and Defendant Cronjager work and possibly live in Kern County. Additionally, Plaintiff knows that Defendants knew about, and continue to know about, the toxic water at WSP because of constant news stories, magazine articles, and newspapers reporting on the failed water in Kern County. The City of Shafter was told not to drink any of the water, and prison staff knows that WSP has been failing a federal standard for TCP for years now.

WSP set a three-year date from December of 2017 to fix the problem. However, five plus years later, the problem still exists and is getting worse. Because of the toxic water, Plaintiff suffers from chronic kidney damage, body rashes, eye irritation, and liver pain.

On July 7, 2023, the Court screened the complaint and "found that all of Plaintiff's claims

should proceed past screening." (ECF No. 9, p. 1). Specifically, it allowed "Plaintiff's Eighth Amendment conditions of confinement claims against [D]efendants Shirley, Cronjager, and Degough [to] proceed past screening." (*Id.* a 7).

**B. Defendants' Motion and Plaintiff's Lack of Opposition**

On October 18, 2024, Defendants filed their motion for summary judgment. (ECF No. 35). After Plaintiff failed to timely respond, the Court *sua sponte* granted Plaintiff an extension to December 18, 2024, to do so. (ECF No. 37). The Court's order warned Plaintiff that failure to timely respond "may result in a dismissal without the further opportunity to respond to the motion." *Id.* Thereafter, at Plaintiff's request, the Court granted a second extension, this time to January 21, 2025, to respond to Defendants' motion for summary judgment. (ECF Nos. 39, 40).

However, despite the extended time to respond, Plaintiff has failed to file an opposition, file another extension request, or file anything since the Court's last order.

**III.   SUMMARY OF DEFENDANTS' MOTION**

Defendants' motion for summary judgment primarily argues that the water at WSP is not dangerously contaminated and that Plaintiff never suffered the medical conditions he alleges from drinking the water.[1] (ECF No. 35). In support of this argument, Defendants attach evidence to their motion for summary judgment, which mainly consists of Defendants' declarations, the declaration of their expert witness (Dr. Timur Durrani), water test results, and parts of Plaintiff's deposition transcript. And as required by Local Rule 260(a), Defendants provided a statement of undisputed facts, which statement cites the relevant evidence relied upon. (ECF No. 35-2).

Mostly, Defendants rely on the expert opinion of Dr. Durrani, who opines that water test results from the roughly three-year period that Plaintiff was confined at WSP reveal that the water was never dangerous to drink. Among other things, Dr. Durrani concludes that there is no scientific literature to support Plaintiff's claim that his alleged medical conditions resulted from the amounts of water that he ingested. Further, the amounts of water that Plaintiff drank during his confinement at WSP would not be expected to have even a minimal risk of harmful effects during his lifetime.

---

[1] Defendants also raise additional arguments, including that Defendants are entitled to qualified immunity. The Court need not address these other arguments as the arguments discussed below dispose of this case.

Additionally, Defendants assert that Plaintiff either (1) had been diagnosed with certain medical conditions before his arrival at WSP; or (2) there is no record of him having certain conditions at all. Further, citing Plaintiff's deposition testimony, they note that no doctor has ever diagnosed any of his alleged conditions as being caused by TCP, and no toxicologist has informed him that WSP's water was dangerous. (ECF No. 35-7, p. 15).

## IV. LEGAL STANDARDS

### A. Motion for Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party does so, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial," which is not a light burden, the party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the

plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the Court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

### B. Conditions of Confinement

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (citation and internal quotation marks omitted). And where this is an

5

allegation concerning "a failure to prevent harm, the inmate must show that he [was] incarcerated under conditions posing a substantial risk of serious harm." *Id.*

Second, "a prison official must have a sufficiently culpable state of mind," which for conditions of confinement claims "is one of deliberate indifference." *Id.* (citations and internal quotation marks omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson,* 217 F.3d at 731. Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Farmer*, 511 U.S. at 835; *Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir. 1998).

## V.     ANALYSIS

In light of the above legal standards, the Court now considers Defendants' motion for summary judgment, which argues that the water at WSP is not dangerously contaminated and that Plaintiff did not suffer any harm from drinking it.[2]

Defendants provide the following undisputed facts in support of their motion for summary judgment, which facts Plaintiff has failed to contest. (ECF No. 35-2).

Plaintiff was incarcerated at WSP from July 14, 2021 to May 7, 2024. At times relevant to the allegations in the complaint, Defendant Shirley was the WSP Acting Warden, Defendant Cronjager was the WSP Associate Warden, and Defendant DeGough was the WSP Correctional Plant Manager that oversees the maintenance of physical plant operations and construction projects.

TCP "is a man made chlorinated hydrocarbon that is typically used as an industrial solvent and as a cleaning and degreasing agent." (*Id.* at 2). On January 1, 2018, a California regulation

---

[2] Under Local Rule 230(c), the Court construes Plaintiff's "failure to file a timely opposition . . . as a nonopposition to the motion." However, the Court will not recommend granting Defendants' motion for summary judgment solely because Plaintiff failed to file a response. Rather, consistent with the summary judgment standards discussed below, the Court will consider whether Defendants have sufficiently demonstrated that summary judgment is warranted. *Cf. Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) ("A local rule that requires the entry of summary judgment simply because no papers opposing the motion are filed or served, and without regard to whether genuine issues of material fact exist, would be inconsistent with Rule 56, hence impermissible under Rule 83.").

went into effect that established a .005 ug/L maximum contaminant level (MCL) for TCP in California's drinking water.

During the time that Plaintiff was incarcerated at WSP, the water was tested and notices from the independent laboratory's findings were posted quarterly at the institution. The tests revealed TCP level results that ranged from 0.000 ug/L to 0.024 ug/L. The notices that were posted "did not state that [WSP's] specific TCP levels were high enough to cause illness." (*Id.* at 4). Rather, they indicated that "'some people who drink water containing 1, 2, 3-trichloropropane in excess of the MCL over many years may have an increased risk of getting cancer,' and encouraged those concerned about other health issues to consult a doctor." (*Id.*).

Defendants' expert, medical toxicologist Dr. Durrani, reviewed relevant literature, the water records for WSP, Plaintiff's deposition, and Plaintiff's medical records.

> He noted that there are no reports of acute or chronic medical conditions in scientific literature for a three-year exposure to the concentration of TCP reported in the water at Wasco State Prison. Thus, Dr. Durrani opined that although Wasco State Prison's water contained TCP concentrations above the MCL, acute and chronic medical conditions are not expected to occur from exposure to TCP in Wasco State Prison's water from July 14, 2021, to May 7, 2024.

(*Id.* at 5). In short, he concluded that WSP's "water was safe to drink even when it was out of compliance with the new MCL." (*Id.*).

Further, Plaintiff's claimed injuries, "kidney damage, skin rashes, eye irritation, and liver pain were not caused, and could not have been caused, by TCP exposure at Wasco State Prison because he was diagnosed with these conditions before he arrived at Wasco State Prison or never diagnosed with these conditions." (*Id.* at 5-6).

More specifically, Plaintiff was diagnosed with renal insufficiency in March 2017 and stage 2 chronic kidney disease in June 2021, before his arrival to WSP in July 2021. And he was diagnosed with skin-related problems in March 2017, September 2018, and again in October 2021. "Additionally, there is no record of eye irritation, conjunctivitis, or liver pain during the time of suspected exposure." (*Id.* at 6).

> Even further, Dr. Durrani calculated Douglas's daily inorganic ingestion of TCP as 0.000001032842582 mg/kg/day, based on Douglas's self-reported ingestion of 4 quarts of water per day and body weight of 88.3 kg.

> TCP's reference dose, meaning the estimated dose of daily oral exposure for a chronic duration that is likely to have no appreciable risk of deleterious effects, is 0.004 mg/kg/day.
>
> Because Douglas's daily, chronic exposure dose of 0.000001032842582 mg/kg/day is significantly lower than the 0.004 mg/kg/day reference dose, Douglas's exposure to TCP between July 14, 2021, and May 7, 2024, would not be expected to have even a minimal risk of harmful effects during his lifetime.

(*Id.* at 7).

Dr. Durrani opines that Plaintiff "did not become ill from ingesting or being exposed to the TCP concentrations in Wasco State Prison's water, that his future health will not be affected, and that he does not have any risk of developing the diseases associated with TCP." (*Id.* at 12).

According to Plaintiff's deposition testimony, no doctor has ever diagnosed any of his alleged conditions as being caused by TCP, and no toxicologist has informed him that WSP's water was dangerous. (*Id.*; ECF No. 35-7, p. 15).

Upon review of this undisputed evidence, the Court concludes that Defendants have met their initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. As Defendants argue, the evidence shows that, while the TCP levels at times exceeded the MCL, the water was not dangerously contaminated. Most, notably Defendants have presented the expert opinion of Dr. Durrani, who opines that there is no literature to support medical conditions arising from Plaintiff's level of exposure to TCP during his time there. Additionally, Plaintiff's alleged injuries were diagnosed before his arrival as WSP or were not recorded at all. Further, based on calculations of Plaintiff's consumption of water, Dr. Durrani opines that Plaintiff would not be expected to have even a minimal risk of harmful effects during his lifetime.

In light of the extensive record establishing that Plaintiff was not incarcerated under conditions posing a substantial risk of serious harm, nor harmed at all, the burden shifts to Plaintiff to demonstrate a genuine issue of material fact for trial. However, Plaintiff has offered no evidence in opposition to Defendants' evidence, as he did not respond to their motion for summary judgment despite two extensions of time to do so.

Accordingly, because Plaintiff has failed to come forth with evidence from which a jury could reasonably render a verdict in his favor, the Court will recommend that Defendants' motion

for summary judgment be granted and this case be dismissed.

## VI.     CONCLUSION AND RECOMMENDATIONS

For the above reasons, there is not a genuine dispute of material fact and Defendants are entitled to judgment as a matter of law.

Accordingly, IT IS RECOMMENDED that Defendants' motion for summary judgment (ECF No. 35) be granted, that judgment be entered in Defendants' favor, and that the Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than fifteen (15) pages, including exhibits. Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **February 6, 2025**                    /s/ Erica P. Grosjean
                                                UNITED STATES MAGISTRATE JUDGE